## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert A. Naborn,            :
               Petitioner        :
                                :
             v.                 :
                                :
Unemployment Compensation    :
Board of Review,             :    No. 542 C.D. 2020
              Respondent    :    Submitted: December 18, 2020


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                               FILED: February 19, 2021


       Robert A. Naborn (Claimant), pro se, petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) May 1, 2020 order affirming the Referee's decision denying Claimant's request to backdate his UC benefit claims pursuant to Section 401(c) of the UC Law (Law)[2] and Section 65.43a of the Department of Labor and Industry's (Department) Regulations (Regulations).[3] Essentially, there is one issue before this Court: whether the UCBR erred by upholding the Referee's decision.[4] After review, this Court affirms.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(c) (relating to qualifications required to secure compensation).

[3] 34 Pa. Code § 65.43a (relating to extended filing).

[4] Claimant presents ten issues in his Statement of the Questions Involved: (1) whether Claimant timely applied for UC benefits; (2) whether Claimant was entitled to UC benefits; (3) whether the UC Service Center promised to and did mail a letter; (4) whether the UC website mentions that the claim reopening process looks exactly the same as the initial claim process; (5) whether Claimant filed an initial claim or a request to reopen a claim; (6) whether Claimant was provided a Pennsylvania UC Handbook (UC Handbook); (7) whether Claimant read the UC Handbook; (8) whether Claimant knew his initial claim was good for one year; (9) whether the UC Handbook explains that initial UC claims are good for one year; and (10) whether the UC

The facts of this case are undisputed. Claimant filed a UC benefit application on June 9, 2019, and received UC benefits after he was separated from his employment with Reconstructionist Rabbinical College. Claimant had also been employed as an instructor by Temple University (Temple) and the University of Pennsylvania (Penn) during the spring 2019 semester. Claimant was reemployed as an instructor at Temple and Penn for the fall 2019 semester, which ended on December 5, 2019. On December 11, 2019, Claimant filed a new UC benefit application.

On January 29, 2020, Claimant filed a "Claimant Questionnaire Reporting Requirements Backdating" (Backdating Questionnaire), Certified Record (C.R.) Item 2 at 1, with the Department's Office of UC Benefits Policy, therein seeking to have his UC benefit claims for claim weeks ending December 14, 2019, through January 11, 2020,[5] backdated, asserting:

> I DID FILE A NEW CLAIM ON [DECEMBER 11, 2019]. I RECEIVED AN EMAIL STATING I WOULD BE RECEIVING 3 LETTERS WITHIN 10-12 DAYS, INCLUDING A PIN NUMBER. I NEVER RECEIVED THEM. WITH THE HOLIDAYS, I THOUGHT THE MAIL MAY BE DELAYED AND IT WAS NOT ON MY MIND [AND] THEN I WENT BACK TO WORK IN JANUARY[.]
>
> . . . .
>
> AND NOW I REALIZED I DIDN'T FILE. VERBAL CERTIFICATION TAKEN FOR WEEKS ENDING [DECEMBER 14, 2019 THROUGH JANUARY 11, 2020]. FOR ALL WEEKS, NO WORK, NO VACATION/HOLIDAY PAY, NO REFUSAL OF WORK, ABLE AND AVAILABLE.

Handbook addresses reopening a claim in the proper context. *See* Claimant Br. at 6. Because these issues are subsumed in this Court's analysis of whether the UCBR erred by upholding the Referee's decision denying Claimant's request to backdate his UC benefit claims, they have been combined and will be addressed accordingly herein.

[5] Claimant seeks backdated UC benefits for the five claim weeks ending December 14, December 21 and December 28, 2019, and January 4 and January 11, 2020.

2

Backdating Questionnaire at 2.

On February 4, 2020, the UC Service Center determined that Claimant was not eligible for UC benefits because "[C]laimant's reason for backdating did not meet the requirements under which backdating for a week or weeks could be allowed. As such, the compensable weeks at issue cannot be backdated under [S]ection 401(c) [of the Law]." C.R. Item 3, Notice of Determination, at 1. Claimant appealed, and a Referee held a hearing on March 4, 2020.[6]

> At the hearing, Claimant testified:
>
> R[eferee] Okay. Now you filed your application the week of June 9, 2019?
>
> C[laimant] Right. That's per a misunderstanding. I did not know that this claim in December was still linked to the claim in June because they are totally different reason[s] for the claim in June.
>
> R[eferee] But the claim -- the [a]pplication is valid for one year.
>
> C[laimant] Oh.
>
> R[eferee] So that's - anything that happens within that one year goes to the original claim.
>
> C[laimant] Given that I didn't know that.

C.R. Item 7, Notes of Testimony (N.T.), at 2. Claimant explained that, after he filed the December 11, 2019 application, he received the following email from the Department:

> This email serves as confirmation that your application for [UC] benefits has been received by the [Department] and is being processed. If there is any missing information, or if any additional information is needed to process your claim, you will be contacted by the UC Service Center at

---

[6] Claimant was unrepresented at the hearing, and neither Temple nor Penn appeared.

3

the phone number or mailing address provided on your application.

. . . .

You will receive a Notice of Financial Determination and a Claim Confirmation Letter which contains your confidential [p]ersonal [i]dentification [n]umber or PIN in the mail within the next 10-12 days.  If you do not receive these mailings after 12 days, contact the Department by calling 888-313-7284.  Please refer to the above filing date and time, in addition to your name and social security number, in any communications with the Department.

You must file biweekly claims for the weeks you are totally or partially unemployed. . . .

N.T. Ex. CL-1; *see also* N.T. at 3.

Claimant recalled that he never received any paperwork from the Department, but assumed the delay was due to the holidays.  *See* N.T. at 6.  Claimant explained that he began working again in January 2020 and realized, after he began thinking about taxes, that he never received anything from the Department.  *See* N.T. at 6-7.  Claimant declared that he filed a new application in December 2019 because he did not see the connection to his June 2019 application, and he was not informed otherwise, until he called the UC Service Center on January 29, 2020.  *See* N.T. at 4-8.  When asked if he received the Pennsylvania UC Handbook (UC Handbook) when he filed his June 2019 application, Claimant responded: "I don't know[,] it was just paperwork but not a book."[7]  N.T. at 5.

---

[7] The UC Handbook was not admitted into evidence at the hearing.  Rather, the UCBR attached a copy of the UC Handbook to its brief to this Court as Appendix 2.  Notwithstanding, this Court has taken judicial notice of the UC Handbook.  *See Hollingsworth v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1109 (Pa. Cmwlth. 2018); *see also Ciccolini v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1796 C.D. 2016, filed August 3, 2017).  This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent."  Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).  The unreported cases are cited herein for their persuasive value.

4

On March 5, 2020, the Referee found, in pertinent part: "The Department informed Claimant in writing in various documents such as the [UC] Handbook and in the financial determination that an application is open for a year." C.R. Item 8, Referee Dec., Finding of Fact (FOF) 5, at 2. Relying on Section 401(c) of the Law and Section 65.43a of the Regulations, the Referee concluded:

> Claimant testified he filed a new application, because he didn't realize he should submit the claims under his original application filed in June 2019. The Department notified Claimant in writing through documentation such as the [UC H]andbook and the financial determination that an application is open for a year. [] Claimant's testimony regarding the reason he did not submit his claims for benefits for the weeks at issue when due, does not fall within any of the justifying reason[s] set forth in the [R]egulations set forth above that permits the backdating of [a] claim week. Accordingly, [] Claimant's request must be denied.

Referee Dec. at 4. Claimant appealed to the UCBR, which adopted and incorporated the Referee's findings of fact and conclusions, but added the following factual finding: "On June 14, 2019, [] [C]laimant filed a claim via the [I]nternet and certified that he was responsible for reading the UC Handbook." C.R. Item 10, UCBR Order, at 1. Claimant appealed to this Court.[8]

Claimant argues that the UCBR erred by upholding the Referee's decision denying his request to backdate his UC benefit claims for the claim weeks ending December 14, 2019 through January 11, 2020. Claimant specifically asserts that the Referee erroneously relied on the UC Handbook, rather than his testimony

---

[8] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

that he anticipated new claim paperwork or notice from the Department that he improperly filed a new application. He further contends that, although he read the UC Handbook, *see* Claimant Br. at 11, "[n]owhere does the UC Handbook mention that there is a distinction between re-applying for or re-opening an existing claim on the one hand and opening a new claim on the other[.]" Claimant Br. at 12.

The UCBR retorts that, when Claimant opened his June 2019 claim, he "certified that he[] [was] responsible to read UCP-1 [(the UC Handbook)]." C.R. Item 1, Claim Record, at 3; *see also* UCBR Br. at 3. "The [UCBR] concedes that [FOF] 5 is not supported by the record. No financial determination is in the record and the [] UC Handbook does not explain that an application for benefits is open for a year. However, even excluding this finding, the [UCBR's] decision is correct." UCBR Br. at 3 n.3. The UCBR adds:

> Admittedly, the UC Handbook does not explain the 52-week benefit year or the difference between filing a new application and reopening an old one. However, the [UC H]andbook is a guide and not a comprehensive treatise. The UC Law and [R]egulations are available online, and the [Department] website does explain the benefit year and how and when to reopen an existing claim.[9]

UCBR Br. at 13 n.12.

Initially, Section 401(c) of the Law states, in relevant part:

> Compensation shall be payable to any employe who is or becomes unemployed, and who-
>
> . . . .
>
> (c) Has made a valid application for benefits with respect to the benefit year for which compensation is claimed and

---

[9] *See* https://www.uc.pa.gov/unemployment-benefits/Am-I-Eligible/Pages/am-I-eligible.aspx (last visited 2/17/2021); https://www.uc.pa.gov/unemployment-benefits/file/Pages/Reopen-an-Existing-Claim.aspx (last visited 2/17/2021).

has made a claim for compensation in the proper manner and on the form prescribed by the [D]epartment[.]

43 P.S. § 801(c).  Section 4(w)(1) of the Law specifies:

A 'Valid Application for Benefits' means an application for benefits on a form prescribed by the [D]epartment, which is filed by an individual, as of a day not included in the benefit year previously established by such individual, who (1) has been separated from his work or who during the week commencing on the Sunday previous to such day has worked less than his full time due to lack of work and (2) is qualified under the provisions of [S]ection [401](a), (b) and (d)[, 43 P.S. § 401(a), (b), (d)].

43 P.S. § 753(w)(1) (emphasis omitted).  Section 4(b) of the Law provides:

'Benefit Year' with respect to an individual who files or has filed a 'Valid Application for Benefits' means the fifty-two consecutive week period beginning with the day as of which such 'Valid Application for Benefits' is filed, and thereafter the fifty-two consecutive week period beginning with the day as of which such individual next files a 'Valid Application for Benefits' after the termination of his last preceding benefit year.

43 P.S. § 753(b) (emphasis omitted).

The UC Handbook explains:

This [**UC**] **Handbook**, will answer many of your questions about the benefits available to you and provide information about your responsibilities as a participant in the program.  Read this booklet carefully and retain it for reference for one year.* Visit **www.uc.pa.gov** for additional information, including answers to Frequently Asked Questions.

*\* This booklet is not an official statement of the Law.  Statements in this handbook are intended for informational purposes only.  If there is a conflict between information in this booklet and the provisions of the Law, the Law controls.*

7

UCBR Br. App. 2 at 2.  The UC Handbook further states: "*You will receive a* **Notice of Financial Determination** [] from the [D]epartment that will state whether you are financially eligible and, if you are, the amount of benefits you may receive.  Your Notice of Financial Determination will be accompanied by an insert that fully explains financial eligibility." *Id*. at 3 (italic emphasis added).  In addition, the UC Handbook directs that a claimant "must file a claim for each week in which [he is] totally or partially unemployed," *id*. at 4, and that his "biweekly claim must be filed during the week (Sunday through Friday) immediately following the two weeks [he is] claiming." *Id*. at 5.

The UC Handbook further explains:

**If You Forget To File**

If you fail to file your biweekly claim at the proper time, you may be denied benefits for those weeks and your UC claim will become 'inactive.'  You must contact your UC [S]ervice [C]enter to reactivate your claim. *If you return to work but then become unemployed again, visit* **www.uc.pa.gov** *or call the UC [S]ervice [C]enter to reopen your claim.*

**REMEMBER!** *If you are waiting for the [D]epartment to determine whether you are eligible for benefits, continue to file your biweekly claims.*  If you are determined to be eligible, you will only get benefits for the weeks for which you filed claims.

*Id*. (italic emphasis added).  In addition, the UC Handbook explains: "*If you received UC benefits on a prior claim by direct deposit within a year before you filed your current application for benefits*, and the bank account previously used for direct deposit is still active, *direct deposit will carry over* to your current UC claim." *Id*. at 10 (italic emphasis added).  Finally, under the UC Handbook heading, "**YOU'VE BEEN APPROVED FOR UC BENEFITS.  NOW WHAT?**" the chart reflects that a claimant must immediately "[*r*]*eport any separation from subsequent employment*" "[*b*]*y*

8

*reopening* [*this*] *claim* over the [I]nternet at **www.uc.pa.gov** or by calling the [UC] service center at 888-313-7284." *Id*. at 19 (italic emphasis added).

In *Beck v. Unemployment Compensation Board of Review* (Pa. Cmwlth. No. 459 C.D. 2013, filed September 11, 2013), this Court summarized:

> The [Department] promulgated [R]egulations that govern the mechanics of filing an application and claims for compensation and the backdating of applications and claim[] weeks. Generally, '[a]n application for [UC] benefits is effective on the first day of the calendar week in which the application is filed or deemed filed in accordance with [Section] 65.43a [of the Regulations] (relating to extended filing), whichever is earlier.' 34 Pa. Code § 65.42.

*Beck*, slip op. at 7. The *Beck* Court explained:

> With regard to the filing of claims, '[f]or a week in which a claimant was employed less than his full[-]time work, the claimant shall file a claim for compensation not later than the last day of the second week after the employer paid wages for that week.' 34 Pa. Code § 65.43a(a). . . . [C]laim weeks [] may be backdated by the number of weeks indicated in Section 65.43a(e) [of the Regulations] if the claimant's untimely filing of the claims is due to one or more of the enumerated reasons in Section 65.43a(e) [and (f) of the Regulations]. 34 Pa. Code § 65.43a(d).

*Beck*, slip op. at 7-8 (footnote omitted).

Section 65.43a(e) of the Regulations provides for a 6-week extension if "[t]he Department suspends accepting filings or is unable to handle all filings, due to an excessive volume of telephone calls or other reasons[;]" a 2-week extension if "[t]he claimant attempts to file by telephone, Internet or fax transmission . . . , the method used to attempt to file is unavailable or malfunctions, and the attempt to file occurs on the last day that the claimant could timely file by the method used[;]" a 52-week extension if "[a] UC Office fails to accept a filing as a result of error or

9

mistake by the Department[;]" a 2-week extension for "[s]ickness or death of a member of the claimant's immediate family or an act of God[;]" a 2-week extension "if the claimant makes all reasonable and good faith efforts to file timely but is unable to do so through no fault of the claimant[;]" and a 52-week extension

> [d]uring the period following the issuance of the March 6, 2020 Proclamation of Emergency Disaster, issued under [Section 7301 of the Emergency Management Services Code,] 35 Pa.C.S. § 7301 (relating to general authority of [the] Governor) due to the novel coronavirus (COVID-19) global pandemic, until the end of the current 'high unemployment' period, as that term is defined in [S]ection 405-A(a.1)(2) [of the Law,[10]] []43 P.S § 815(a.1)(2)[].

34 Pa. Code § 65.43a(e). In addition, Section 65.43a(f) of the Regulations extends the claim filing deadline due to a claimant's illness or injury "until the last day of the second week after the incapacity ends." 34 Pa. Code § 65.43a(f). Finally, "Claimant has the burden of proof to establish that his application satisfies the requirements for backdating a claim for benefits." *Egreczky v. Unemployment Comp. Bd. of Rev.*, 183 A.3d 1102, 1106 (Pa. Cmwlth. 2017).

> Further,

> [i]n UC cases, the [UCBR's] findings of fact must be supported by '[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'' *W[.] & S[.] Life Ins[.] Co. v. Unemployment Comp[.] [Bd.] of Rev[.]*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Comp[.] [Bd.] of Rev[.]*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). 'The [UCBR's] findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings.' *W[.] & S[.] Life Ins[.] Co.*, 913 A.2d at 335. This Court is bound 'to examine the testimony in the light most favorable to the party in whose favor the [UCBR] has found, giving that party the benefit of all inferences that

---

[10] Added by Section 2 of the Act of February 9, 1971, P.L. 1.

10

can logically and reasonably be drawn from the testimony' to determine if substantial evidence exists for the [UCBR's] findings. *U*[.]*S*[.] *Banknote Co. v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 575 A.2d 673, 674 ([Pa. Cmwlth.] 1990). Moreover, 'even if there is contrary evidence of record, the [UCBR's] findings of fact are binding upon the Court where supported by substantial evidence.' *Borough of Coaldale v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

*Cambria Cnty. Transit Auth. (Cam Tran) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019).

Here, Claimant's reason for failing to properly file his claims for weeks ending December 14, December 21 and December 28, 2019, and January 4 and January 11, 2020, is not among those listed in Section 65.43a(e) or (f) of the Regulations. Rather, Claimant

attributes the lack of a timely filing to h[is] unfamiliarity with the [UC] system. Though we are not unsympathetic to the recently unemployed who must, often times without the assistance of counsel, navigate what can seem at times to be a cumbersome benefits system, we cannot allow a lack of familiarity to be an excuse to permit backdating of [UC] benefits.[11]

*Beck*, slip op. at 9. Claimant's ignorance of the UC claim process and/or negligence is not a basis upon which this Court may reverse the UCBR's decision. *See Ciccolini v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1796 C.D. 2016, filed August 3, 2017); *Readinger v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1288 C.D. 2016, filed May 22, 2017); *Caruso v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1917 C.D. 2015, filed May 23, 2016); *Shuty v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 609 C.D. 2012, filed October 3, 2012); *Valle v.*

---

[11] Nevertheless, this Court is dismayed that the Department's UC claims' system would allow a claimant to create a new UC claim within the same benefit year, and that the UC Handbook does not more clearly explain how subsequent claims are to be made in a single benefit year.

*Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 701 C.D. 2012, filed December 20, 2012).

Moreover, Claimant's testimony provides substantial evidence to support the UCBR's adopted findings that Claimant did not review the UC Handbook, and did not file claims for the weeks ending December 14, December 21 and December 28, 2019, and January 4 and January 11, 2020, until January 29, 2020. As such, the findings are binding on appeal. *Cam Tran.* Further, although the UC Handbook does not specify that subsequent UC benefit claims made within the same benefit year should be made under the original claim, the UC Handbook clearly states in several places that a claimant must *reopen* his original claim upon subsequent unemployment, that he should make biweekly claims while he awaits an eligibility determination, and that he should contact the UC Service Center with any questions.

Claimant filed his new application on December 11, 2019, and did not follow up on the Notice of Financial Determination or Claim Confirmation Letter/PIN after 12 days passed as the Department's December 11, 2019 email directed, nor did he file biweekly claims with the UC Service Center until January 29, 2020. Given the particular circumstances of this case, this Court is constrained to affirm the UCBR's determination that Claimant's ignorance and/or negligence does not justify an extension under Section 65.43a(e) of the Department's Regulations. Accordingly, the UCBR properly upheld the Referee's decision.

Based on the foregoing, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

12

Robert A. Naborn, : 
                Petitioner : 
                 : 
          v. : 
                 : 
Unemployment Compensation : 
Board of Review, :    No. 542 C.D. 2020
             Respondent : 

## O R D E R

AND NOW, this 19th day of February, 2021, the Unemployment Compensation Board of Review's May 1, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge